**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAIME URQUILLA, SONIA URQUILLA, MARIA MARTINS, and ELADIA SALMERON,<br><br>**Plaintiffs,**<br><br>-*against*-<br><br>GREAT NECK SAW MANUFACTURERS, INC.,<br><br>**Defendant.** | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs JAIME URQUILLA, SONIA URQUILLA, MARIA MARTINS, and ELADIA SALMERON, by their attorneys THE YITZHAK LAW GROUP, as and for their Complaint against Defendant GREAT NECK SAW MANUFACTURERS, INC. ("Great Neck Saw") herein allege as follows:

### I.   PRELIMINARY STATEMENT

1. Plaintiffs bring this action for Defendant's violation of the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 – 634 ("ADEA"); Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e – 2000e-17 ("Title VII"); and New York State's Human Rights Law, as codified, Executive Law § 296 ("NYSHRL"), based on Defendant's illegal, intentional, and discriminatory layoffs of Plaintiffs on or about May 26, 2020.

2. On March 3, 2021, through undersigned counsel, Plaintiffs Jaime Urquilla, Sonia Urquilla, and Maria Martins submitted charges of discrimination against Defendant to the Equal

Opportunity Employment Commission ("EEOC"), and on March 8, 2021, they received their Right to Sue letters (**Exhibit A**).

3. On March 11, 2021, through undersigned counsel, Plaintiff Eladia Salmeron submitted a charge of discrimination against Defendant to the EEOC, and on that same day, she received her Right to Sue letter (**Exhibit A**).

## II. PARTIES

4. Plaintiffs at all times relevant to this action resided in Nassau County, New York.

5. Plaintiff Jaime Urquilla resides at 718 Martin Dr., Uniondale, NY 11553.

6. Plaintiff Sonia Urquilla resides at 772 Union Dr., Uniondale, NY 11553.

7. Plaintiff Maria Martins resides at 206 Evelyn Rd., Mineola, NY 11501.

8. Plaintiff Eladia Salmeron resides at 505 Chester St., Uniondale, NY 11553.

9. Defendant Great Neck Saw is a business having for an address and principal place of business 165 East 2nd St., Mineola, NY 11501. The New York State Department of State serves as Defendant's agent for service of process.

## III. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331.

11. This Court has supplemental jurisdiction over Plaintiffs' NYSHRL claims under 28 U.S.C. § 1367 because the state law claims form part of the same case or controversy under Article III of the U.S. Constitution.

12. This Court has personal jurisdiction over the parties to this action because a substantial part of the acts and omissions giving rise to Plaintiffs' claims occurred in the Eastern District of New York, where the Plaintiffs worked at Defendant's plant in Mineola, New York.

13. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because the Defendant is deemed to reside where its principal place of business is located, which is in Mineola, NY.

## IV. FACTS

14. Great Neck Saw is a private employer located in Mineola, New York, United States of America. It employs more than 20 employees.

15. Great Neck Saw employed Plaintiffs as full-time permanent employees.

16. On or about April 16, 2020, Great Neck Saw sent notices to Plaintiffs and other employees of the company, informing them that they were being furloughed and their last paycheck would be the next day, April 17, 2020. The notice mentioned COVID-19 and implied that the company was closing because of the pandemic, stating, "We look forward to the future when we can reopen and hope to be able to provide work once again to those employees impacted by this temporary furlough. We are making every effort to prepare to re-open and continue to closely monitor guidance from government and health officials to determine the right time to reopen."

17. On April 28, 2020, Great Neck Saw was approved for a PPP loan in the amount of $3,665,052. Great Neck Saw claimed all of this money would go to payroll for 377 jobs reported.

18. On May 22, 2020, Great Neck Saw sent letters to each of the Plaintiffs terminating his or her employment effective May 26, 2020 due to a "reduction in its workforce" ("the RIF"). Around 40 employees were terminated in this RIF.

19. Great Neck Saw claimed the RIF was due to "unforeseeable business circumstances prompted by COVID-19"; however, the company had remained open and operational even after it furloughed Plaintiffs on April 16, supposedly due to COVID-19 restrictions by the government.

20. Plaintiff Jaime Urquilla was born in El Salvador on October 1, 1970. English is her second language. In May 2020, he was 49 years old.

21. Plaintiff Sonia Urquilla was born in El Salvador on October 15, 1970. English is her second language. In May 2020, she was 49 years old.

22. Plaintiff Maria Martins was born in Portugal on July 10, 1960. English is her second language. In May 2020, she was 59 years old.

23. Plaintiff Eladia Salmeron was born in El Salvador on August 20, 1962. English is her second language. In May 2020, she was 57 years old.

### V.  FIRST CAUSE OF ACTION: AGE DISCRIMINATION IN VIOLATION OF ADEA

24. Paragraphs 1 through 23 are herein incorporated.

25. Defendant Great Neck Saw employed Plaintiffs as full-time permanent employees.

26. Defendant Great Neck Saw terminated Plaintiffs in violation of the ADEA, 29 U.S.C. §§ 621 – 634 by intentionally and willfully discriminating against them based on their age.

27. All four Plaintiffs are members of the class protected by the ADEA of workers over the age of 40.

28. Defendant Great Neck Saw illegally and intentionally subjected Plaintiffs to disparate treatment in violation of the ADEA.

29. Defendant Great Neck Saw also willfully violated the ADEA, in that it knew or showed reckless disregard for whether its conduct was prohibited by the ADEA.

30. Plaintiff Jaime Urquilla was qualified for and satisfactorily performed the duties required by his position of a supervisor of employees who assembled tools at Great Neck Saw.

He worked at the company from 1990 until May 26, 2020 and was never disciplined, suspended, or told about any problems with his performance during that time.

31. Plaintiff Sonia Urquilla was qualified for and satisfactorily performed the duties required by her position of a machine operator at Great Neck Saw. She worked at the company from 1989 until May 26, 2020 and was never disciplined, suspended, or told about any problems with her performance during that time.

32. Plaintiff Maria Martins was qualified for and satisfactorily performed the duties required by her position of a tool assembler at Great Neck Saw. She worked at the company from 1989 until May 26, 2020 and was never disciplined, suspended, or told about any problems with her performance during that time.

33. Plaintiff Eladia Salmeron was qualified for and satisfactorily performed the duties required by her position of machine operator and packager at Great Neck Saw. She worked at the company from 1990 until May 26, 2020 and was never disciplined, suspended, or told about any problems with her performance during that time.

34. All four Plaintiffs were subjected to an adverse job action when Great Neck Saw terminated their employment on May 26, 2020 in a pretextual RIF.

35. This adverse job action was made under circumstances that give rise to an inference of discrimination because all but two of the 40 or so employees terminated in the RIF, including Plaintiffs, were over 40 years old.

36. None of the Plaintiffs had any discipline issues or low performance ratings during their employment with Great Neck Saw. They each dedicated their entire 30-year careers to Great Neck Saw and had stellar attendance records in their positions at the company. To Plaintiffs' knowledge, there are no records of any problems with Plaintiffs' work performance in the three decades they worked for Great Neck Saw.

37. Great Neck Saw intentionally used COVID-19 as a pretext for the RIF in which they terminated Plaintiffs' employment, stating in its WARN Act notice of May 22, 2020: "This notice … is to inform you that there will be a mass layoff due to government-mandated closures and the unforeseen loss of business revenue caused by the global pandemic."

38. But the RIF was not economically justified. Great Neck Saw not only remained open during the pandemic in April and May, when it claimed to be closed; it also immediately hired new, younger employees to replace the older ones, including Plaintiffs, that it had terminated. This shows that the RIF due to COVID-19 was a pretext that cannot be excused as economically justified: Why would the company stay open and even hire new workers if it had to close because of "government-mandated closures"? The answer is that it didn't close – in fact it received a $3.67-million PPP loan to stay open, and it wanted to get rid of its older workers, including Plaintiffs. An RIF during a pandemic was the perfect pretext and excuse to do so.

39. Defendant Great Neck Saw's action also had an illegally disparate impact on Plaintiffs in violation of the ADEA.

40. Specifically, Great Neck Saw's employment practice of using a facially neutral RIF to thin its workforce during a pandemic had an adverse impact on Plaintiffs as a protected class of older workers. Plaintiffs were affected more harshly than younger workers because Plaintiffs were fired and younger workers allowed to continue working during and after the pandemic. Great Neck Saw's RIF excluded Plaintiffs, as members of a protected group, from a job by terminating their employment.

41. The statistical evidence that supports this claim of disparate impact is simple: 38 of the approximately 40 workers Great Neck Saw terminated in the pretextual RIF were over 40 years old. The disparity is so great that it cannot be accounted for by chance, and it is sufficiently

substantial to raise an inference of causation: Great Neck Saw's use of the RIF caused the termination almost exclusively of older workers in violation of the ADEA.

42. Great Neck Saw's RIF cannot be justified by business necessity, for the same reasons listed above: It was not necessary to let anyone go because the company remained open and hired other younger workers to replace the older terminated ones including Plaintiffs.

43. Great Neck Saw's intentional conduct – terminating Plaintiffs for an illegal reason and using a pandemic as an excuse, all while lying, remaining operational and hiring replacement workers – is worthy of liquidated damages. It also shows extreme hostility that makes a productive and amicable working relationship with Plaintiffs impossible, and thus reinstatement impracticable.

44. Plaintiff Jaime Urquilla was damaged by Defendant's actions: Because of Defendant's illegal termination of his employment, he could not pay all of his bills or properly support his family. Because of his age, and because he had worked for Great Neck Saw for decades, his options for reemployment were very limited and he has no reasonable prospect of obtaining comparable alternative employment. Despite his best and reasonable efforts, he has been unable to secure employment since being terminated in May 2020 by Great Neck Saw.

45. Plaintiff Sonia Urquilla was damaged by Defendant's actions: Because of Defendant's illegal termination of her employment, she could not pay all of her bills or properly support herself or her family. Because of her age, and because she had worked for Great Neck Saw in the same position for decades, her options for reemployment were very limited and she has no reasonable prospect of obtaining comparable alternative employment. Despite her best and reasonable efforts, she has only been able to secure part-time work in a nursing home at lower pay since being terminated in May 2020 by Great Neck Saw.

46. Plaintiff Maria Martins was damaged by Defendant's actions: Because of Defendant's illegal termination of her employment, she could not pay all of her bills or properly support herself or her family. Because of her age, and because she had worked for Great Neck Saw in the same position for decades, her options for reemployment were very limited and she has no reasonable prospect of obtaining comparable alternative employment. Despite her best and reasonable efforts, she has been unable to secure employment since being terminated in May 2020 by Great Neck Saw.

47. Plaintiff Eladia Salmeron was damaged by Defendant's actions: Because of Defendant's illegal termination of her employment, she could not pay all of her bills or properly support herself or her family. Because of her age, and because she had worked for Great Neck Saw in the same position for decades, her options for reemployment were very limited and she has no reasonable prospect of obtaining comparable alternative employment. Despite her best and reasonable efforts, she has only been able to secure part-time work cleaning offices at lower pay since being terminated in May 2020 by Great Neck Saw.

## VI. SECOND CAUSE OF ACTION:
## RACE AND NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII

48. Paragraphs 1 through 23 are herein incorporated.

49. Defendant Great Neck Saw employed Plaintiffs as full-time permanent employees.

50. Great Neck Saw terminated Plaintiffs, who are all members of a non-white Hispanic race with national origins of South and Central America, in violation of Title VII by discriminating against them based on their race and national origin.

51. All of the employees Great Neck Saw terminated in the RIF, including Plaintiffs, were Spanish-speaking and had national origins in South and Central America.

52. Defendant Great Neck Saw illegally and intentionally subjected Plaintiffs to disparate treatment in violation of Title VII, and it acted with conscious knowledge that it was violating Title VII, engaging in egregious or outrageous conduct from which an inference of malice or reckless indifference can be drawn. Defendant had no antidiscrimination policy, and it made no effort to enforce any such policy.

53. Plaintiff Jaime Urquilla was qualified for and satisfactorily performed the duties required by his position of a supervisor of employees who assembled tools at Great Neck Saw. He worked at the company from 1990 until May 26, 2020 and was never disciplined, suspended, or told about any problems with his performance during that time.

54. Plaintiff Sonia Urquilla was qualified for and satisfactorily performed the duties required by her position of a machine operator at Great Neck Saw. She worked at the company from 1989 until May 26, 2020 and was never disciplined, suspended, or told about any problems with her performance during that time.

55. Plaintiff Maria Martins was qualified for and satisfactorily performed the duties required by her position of a tool assembler at Great Neck Saw. She worked at the company from 1989 until May 26, 2020 and was never disciplined, suspended, or told about any problems with her performance during that time.

56. Plaintiff Eladia Salmeron was qualified for and satisfactorily performed the duties required by her position of machine operator and packager at Great Neck Saw. She worked at the company from 1990 until May 26, 2020 and was never disciplined, suspended, or told about any problems with her performance during that time.

57. All four Plaintiffs were subjected to an adverse job action when Great Neck Saw terminated their employment on May 26, 2020 in a pretextual RIF.

58. This adverse job action was made under circumstances that give rise to an inference of discrimination because all of the 40 or so employees terminated in the RIF, including Plaintiffs, were of a non-white Hispanic race with national origins of South and Central America.

59. None of the Plaintiffs had any discipline issues or low performance ratings during their employment with Great Neck Saw. They each dedicated their entire 30-year careers to Great Neck Saw and had stellar attendance records in their positions at the company. To Plaintiffs' knowledge, there are no records of any problems with Plaintiffs' work performance in the three decades they worked for Great Neck Saw.

60. Great Neck Saw intentionally used COVID-19 as a pretext for the RIF in which they terminated Plaintiffs' employment, stating in its WARN Act notice of May 22, 2020: "This notice … is to inform you that there will be a mass layoff due to government-mandated closures and the unforeseen loss of business revenue caused by the global pandemic."

61. But the RIF was not economically justified. Great Neck Saw not only remained open during the pandemic in April and May, when it claimed to be closed; it also immediately hired other employees to replace the Plaintiffs. This shows that the RIF due to COVID-19 was a pretext that cannot be excused as economically justified: Why would the company stay open and even hire new workers if it had to close because of "government-mandated closures"? The answer is that it didn't close – in fact it received a $3.67-million PPP loan to stay open, and it wanted to get rid of its workers of a non-white Hispanic race with national origins of South and Central America, including Plaintiffs. An RIF during a pandemic was the perfect pretext and excuse to do so.

62. Defendant Great Neck Saw's action also had an illegally disparate impact on Plaintiffs in violation of Title VII.

63. Specifically, Great Neck Saw's employment practice of using a facially neutral RIF to thin its workforce during a pandemic had an adverse impact on Plaintiffs as a protected class of workers. Plaintiffs were affected more harshly than other workers who speak fluent English because Plaintiffs were fired and workers who speak fluent English were allowed to continue working during and after the pandemic. Great Neck Saw's RIF excluded Plaintiffs, as members of a protected group, from a job by terminating their employment.

64. The statistical evidence that supports this claim of disparate impact is that all of the approximately 40 workers Great Neck Saw terminated in the pretextual RIF were of a non-white Hispanic race with national origins of South and Central America. The disparity is so great that it cannot be accounted for by chance, and it is sufficiently substantial to raise an inference of causation: Great Neck Saw's use of the RIF caused the termination exclusively of workers of a non-white Hispanic race with national origins of South and Central America, who do not speak fluent English in violation of the ADEA.

65. Great Neck Saw's RIF cannot be justified by business necessity, for the same reasons listed above: It was not necessary to let anyone go because the company remained open and simply hired other workers who were fluent in English to replace Plaintiffs.

66. Great Neck Saw used the RIF to discriminate against Plaintiffs with malice or reckless indifference to their federally protected rights. Defendant implemented the RIF with conscious knowledge that it was violating the law, or it engaged in egregious or outrageous conduct from which an inference of malice or reckless indifference could be drawn.

67. Plaintiff Jaime Urquilla was damaged by Defendant's actions: Because of Defendant's illegal termination of his employment, he could not pay all of his bills or properly support his family. Because of his age, and because he had worked for Great Neck Saw for decades, his options for reemployment were very limited. Despite his best and reasonable efforts,

he has been unable to secure employment since being terminated in May 2020 by Great Neck Saw. He suffered physical injuries to his back on his job at Great Neck Saw but was directed to keep working; he therefore has permanent physical injuries that require medical treatment and continue to impact his ability to work and his quality of life, and he has incurred medical bills that are not covered by insurance. He has also suffered emotional damages including extreme stress and worry over his lack of employment, his loss of the ability to support his family, and his family's sudden lack of health insurance in the middle of a pandemic.

68. Plaintiff Sonia Urquilla was damaged by Defendant's actions: Because of Defendant's illegal termination of her employment, she could not pay all of her bills or properly support herself or her family. Because of her age, and because she had worked for Great Neck Saw in the same position for decades, her options for reemployment were very limited. Despite her best and reasonable efforts, she has only been able to secure part-time work in a nursing home at lower pay since being terminated in May 2020 by Great Neck Saw. She suffered physical injuries to her back on her job at Great Neck Saw but was directed to keep working; she therefore has permanent physical injuries that require medical treatment and continue to impact her ability to work and her quality of life, and she has incurred medical bills. She has also suffered emotional damages including extreme stress and worry over her lack of full-time employment and her loss of the ability to support her family in the middle of a pandemic.

69. Plaintiff Maria Martins was damaged by Defendant's actions: Because of Defendant's illegal termination of her employment, she could not pay all of her bills or properly support herself or her family. Because of her age, and because she had worked for Great Neck Saw in the same position for decades, her options for reemployment were very limited. Despite her best and reasonable efforts, she has been unable to secure employment since being terminated in May 2020 by Great Neck Saw. She suffered physical injuries to her back on her

job at Great Neck Saw but was directed to keep working; she therefore has permanent physical injuries that require medical treatment and impact her quality of life, and she has incurred medical bills that are not covered by insurance. She has also suffered emotional damages including extreme stress and worry over her lack of employment, her loss of the ability to support her family, and her family's sudden lack of health insurance in the middle of a pandemic.

70. Plaintiff Eladia Salmeron was damaged by Defendant's actions: Because of Defendant's illegal termination of her employment, she could not pay all of her bills or properly support herself or her family. Because of her age, and because she had worked for Great Neck Saw in the same position for decades, her options for reemployment were very limited. Despite her best and reasonable efforts, she has only been able to secure part-time work cleaning offices at lower pay since being terminated in May 2020 by Great Neck Saw. She suffered physical injuries to her arm and knee on her job at Great Neck Saw but was directed to keep working; she therefore has permanent physical injuries that require medical treatment and continue to impact her ability to work and her quality of life, and she has incurred medical bills that are not covered by insurance. She has also suffered emotional damages including extreme stress and worry over her lack of full-time employment, her loss of the ability to support her family, and her family's sudden lack of health insurance in the middle of a pandemic.

### VII. THIRD CAUSE OF ACTION: AGE DISCRIMINATION IN VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW

71. Paragraphs 1 through 23 are herein incorporated.

72. Defendant Great Neck Saw intentionally discharged Plaintiffs from employment based on their age in violation of the NYSHRL, acting with malice or reckless indifference to Plaintiffs' rights.

73. The standards for recovery for age discrimination under the NYSHRL are the same as the federal standards under the ADEA. Thus Paragraphs 25 through 47 are herein incorporated and realleged under the NYSHRL.

### VIII. FOURTH CAUSE OF ACTION: RACE AND NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW

74. Paragraphs 1 through 23 are herein incorporated.

75. Defendant Great Neck Saw intentionally discharged Plaintiffs from employment based on their race and/or national origin in violation of the NYSHRL, acting with malice or reckless indifference to Plaintiffs' rights.

76. The standards for recovery for race and national origin discrimination under the NYSHRL are the same as the federal standards under Title VII. Thus Paragraphs 49 through 70 are herein incorporated and realleged under the NYSHRL.

### IX. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray the Court grant them the following relief:

a. An injunction prohibiting future discrimination by Defendant and requiring Defendant to undergo equal employment opportunity training;

b. Back pay, including any unpaid vacation or sick leave, and severance pay;

c. An equitable award of front pay through retirement age for each Plaintiff;

d. Liquidated double damages under the ADEA;

e. Compensatory and punitive damages under Title VII;

f. Punitive damages in the amount of $10,000 per Plaintiff under the NYSHRL;

g. Attorneys' fees under the ADEA, Title VII, and the NYSHRL; and

h. Any other such further relief the Court deems just and proper.

## X.   JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues so triable of right by a jury.

Dated: Great Neck, New York
       May 27, 2021

                                          THE YITZHAK LAW GROUP
                                          *Attorneys for Plaintiffs*

                                          By: _____
                                          Michele M. Bowman, Esq.
                                          1 Linden Place, Suite 406
                                          Great Neck, New York 11021
                                          (516) 466-7144
                                          michele@etylaw.com

## CERTIFICATION AND VERIFICATION

STATE OF NEW YORK )
                          ) ss:
COUNTY OF NASSAU )

    **JAIME URQUILLA**, being duly sworn, deposes and states:

    I am a Plaintiff in the within action. The foregoing Complaint is true to my own knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

    Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this Complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the Complaint otherwise complies with the requirements of Rule 11.

Dated: May 24, 2021

                                                  JAIME URQUILLA

Sworn to before me this
27 day of MAY 2021

_____
Notary Public

JENINE A. SUMPTER
Notary Public, State of New York
No. 01SU6362994
Qualified in Queens County
Commission Expires August 14, 2021

## CERTIFICATION AND VERIFICATION

STATE OF NEW YORK )
                             ) ss:
COUNTY OF NASSAU )

**SONIA URQUILLA**, being duly sworn, deposes and states:

I am a Plaintiff in the within action. The foregoing Complaint is true to my own knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this Complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the Complaint otherwise complies with the requirements of Rule 11.

Dated: **05/25**, 2021

                                                       _SONIA URQUILLA_
                                                           SONIA URQUILLA

Sworn to before me this
25 day of MAY 2021

_Jenine A. Sumpter_
Notary Public

JENINE A. SUMPTER
Notary Public, State of New York
No. 01SU6362994
Qualified in Queens County
Commission Expires August 14, 2021

## CERTIFICATION AND VERIFICATION

STATE OF NEW YORK )
) ss:
COUNTY OF NASSAU )

**MARIA MARTINS**, being duly sworn, deposes and states:

I am a Plaintiff in the within action. The foregoing Complaint is true to my own knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this Complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the Complaint otherwise complies with the requirements of Rule 11.

Dated: 5-26 , 2021

_Maria Martins_
MARIA MARTINS

Sworn to before me this
26 day of MAY 2021

_Jenine A. Sumpter_
Notary Public

JENINE A. SUMPTER
Notary Public, State of New York
No. 01SU6362994
Qualified in Queens County
Commission Expires August 14, 20__

## CERTIFICATION AND VERIFICATION

STATE OF NEW YORK  )
                  ) ss:
COUNTY OF NASSAU  )

**ELADIA SALMERON**, being duly sworn, deposes and states:

I am a Plaintiff in the within action. The foregoing Complaint is true to my own knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this Complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the Complaint otherwise complies with the requirements of Rule 11.

Dated: May 24, 2021

_____
ELADIA SALMERON

Sworn to before me this
24 day of May, 2021

_____
Notary Public

JENINE A. SUMPTER
Notary Public, State of New York
No. 01SU6362994
Qualified in Queens County
Commission Expires August 14, 2021